## UNITED STATES v. LINK.
### No. 10749.

United States Court of Appeals
Third Circuit.

Argued Nov. 20, 1952.

Decided Feb. 26, 1953.

John E. Selser, Hackensack, N. J. (Selser & Shenier, Hackensack, N. J., on the brief), for appellant.

John G. Thevos, Asst. U. S. Atty., Newark, N. J. (Grover C. Richman, Jr., U. S. Atty., Newark, N. J., on the brief), for appellee.

Before McLAUGHLIN, KALODNER and STALEY, Circuit Judges.

KALODNER, Circuit Judge.

This is an appeal from a conviction for income tax evasion under Section 145(b) of the Internal Revenue Code, 26 U.S.C. § 145(b).[1]

The appeal is directed at specific instructions in the trial court's charge to the jury and a statement in the charge which

1. This section provides:
"Any person required under this chapter to collect, account for, and pay over any tax imposed by this chapter, who willfully fails to collect or truthfully account for and pay over such tax, and any person who willfully attempts in any manner to evade or defeat any tax imposed by this chapter or the payment thereof, shall, in addition to other penalties provided by law, be guilty of a felony and, upon conviction thereof, be fined not more than $10,000, or imprisoned for not more than five years, or both, together with the costs of prosecution."

the defendant asserts was particularly prejudicial to him. Before discussing the errors complained of a brief statement of the factual background is in order.

The defendant, Leo Link, was tried on a four-count indictment charging him with filing false and fraudulent income tax returns for 1946, 1947, 1948 and 1949. He was found guilty on all four counts and sentenced to jail for four years and fined $10,000 and costs.

The evidence adduced at the trial established that the defendant engaged in "bookmaking" activities under the name of J. W. Donaldson using the facilities of the Western Union Telegraph Company. The methods pursued were as follows: Bettors wired money orders to the defendant with instructions to bet on their choices at various race tracks; when the bettors won they were paid via Western Union money orders; when horses were "scratched" (failed to start) refunds were made by money orders or by check on a Hudson County bank. It is perhaps needless to add that the defendant did not actually place the bets at the various race tracks but "booked" them himself.

The government offered in evidence books and records of the defendant and the Western Union which clearly proved the scope and nature of the defendant's operations. Moreover currency in the amount of $127,000 was found in a safe in the home of defendant's mother-in-law with whom he lived. He claimed that $102,000 of the money belonged to the mother-in-law and that only $25,000 belonged to a mysterious principal for whom he worked on a fee basis—25 cents on each bet placed.

Government witnesses submitted calculations, based on testimony of Western Union employees and available records, fixing defendant's gross receipts for the four taxable years involved at approximately $1,063,000 and his net income at approximately $257,000. In its calculations the government allowed deductions in the amount of some $800,000—amounts paid to winners and refunds on "scratches". It also allowed an additional $6,000 comprised largely of defendant's standard deductions allowable by law.

The crux of defendant's contention at the trial was that he was merely the "front" through whom the "bookmaking" operations were carried on; that he merely retained a commission of 25 cents on each bet and that he had reported his entire income in his tax returns and paid the tax due thereon.[2]

Three questions are raised by the defendant on this appeal. We will dispose of them in the order presented.

### I

The defendant first urges the trial court erred in its instructions on burden of proof. The trial judge in his instructions to the jury charged that: "* * * the burden is upon the defendant to prove that he had other deductions and lawful expenses not shown in his return." This instruction, the defendant urges, was erroneous. We do not agree. The government by its testimony established unreported income and allowed deductions claimed by defendant and other deductions that it could calculate without his assistance. It is well-settled that "Evidence of unexplained funds or property in the hands of a taxpayer establishes a prima facie case of understatement of income" and that "It is then incumbent on the defendant to overcome the logical inferences to be drawn from the facts proved." United States v. Hornstein, 7 Cir., 1949, 176 F.2d 217, 220. In Gariepy v. United States, 6 Cir., 1951, 189 F.2d 459, 463, it was held that "* * * the government is not required to prove a negative * * *". Here too, the government is not required to prove the negative, i. e. that the defendant did not have any other deductions. Other deductions, if there were any, could have easily been established by the defendant. By its proof the government established its prima facie case, and the burden of

---

2. The aggregate net income reported by the defendant for the taxable years involved was $9,553.77 on which he paid a tax of $748.00. According to the government's testimony he should have paid a tax of $136,291.20 on a net income of $257,000.

going ahead with the evidence of additional expenses which equalled or exceeded gross income was on the defendant. Cf. United States v. Venuto, 3 Cir., 1950, 182 F.2d 519.

## II

■ The defendant also complains that the trial judge erred in his instructions as to the rule of reasonable doubt. There is merit to this complaint.

Although the trial judge correctly defined the rule at the beginning of his charge, and referred to it again repeatedly, he unfortunately added the following:

"You are further instructed that if you find the evidence as to this defendant equally balanced, that is, that it is as consistent with innocence as it is with guilt, you must acquit the defendant and find him not guilty. In other words, if after you consider all of the evidence and you put it in the scales and you weigh it in your minds you honestly and conscientiously find and believe that the evidence as it has been produced here is as equally consistent with the innocence of this man as it is with his guilt, you must acquit him and find him not guilty, because as I said, he must be proven guilty beyond a reasonable doubt."

And again, near the conclusion of his charge, the trial judge said:

"And so * * * if you find the evidence respecting the defendant is as consistent with his innocence as with his guilt, you must acquit him."

In our opinion the added instructions quoted might well have served to confuse the jury.[3] As was recently said by Judge Goodrich, speaking for this Court in United States v. Martell, 3 Cir., 1952, 199 F.2d 670, 672:

"No one can know for certain what a given portion of a charge does to the collective minds of the jury but this particular point complained of was in a charge made after the jury had been recalled and constituted the last thing they were told when they retired to consider their verdict. We think the probability of confusion was such as to create reversible error."[4]

## III

■ A further and final complaint of the defendant is directed at the following statement of the trial judge in the very last portion of his chrage:[5]

"* * * But if on the other hand you find that the law has been violated as charged in this indictment, then you should not hesitate, because of sympathy, prejudice or any extraneous consideration of any kind, to render a verdict of guilty as a clear warning to all that crime cannot be committed with impunity in the United States and go unpunished. *The people of this State and of the United States are entitled to be assured of this conviction.*" (Emphasis supplied.)

In our opinion the statement that "The people of this State and of the United States are entitled to be assured of this conviction" was prejudicial to the defendant and was clearly erroneous for it may well have been construed by the jury as an instruction to render a verdict of guilty. At the very least it could well have been construed by the jury as an emphatic expression by the trial judge of the defend-

---

3. Indeed, in United States v. Matsinger, 3 Cir., 1951, 191 F.2d 1014, 1016, we pointed out that "* * * a case may not be submitted to a jury when the actions of the accused are as consistent with innocence as with guilt * * *."

4. In Boatright v. United States, 8 Cir., 1939, 105 F.2d 737, at page 740, the trial judge charged: "If * * * there should arise in this case a reasonable doubt as to the guilt of the defendants * * * it would be your duty to * * * acquit * * * them *as the doubt might*

*justify or warrant you in doing.*" In reversing a judgment for the United States, the Court said, 105 F.2d at page 740: "Just what is meant by the limitation 'as the doubt might justify or warrant you in doing', is not clear, and we think the defendants were entitled to an instruction on reasonable doubt without such limitation."

5. The statement was made in the trial judge's additional charge to the jury in the course of ruling on the defendant's exceptions to the court's charge in chief.

ant's guilt and it is needless to say that such a construction would perforce weigh heavily in the jury's deliberations.

While it is true that in exceptional cases a trial judge may express his opinion that the evidence established the defendant's guilt beyond a reasonable doubt, it is well-settled that in doing so he must in unequivocal terms caution the jury that it is not bound by his opinion and that it is the jury's exclusive function to determine the question of the accused's innocence or guilt.[6]

Trial judges must always keep in mind the possible, if not probable, effect of any statement which they may make in the course of a trial or in their instructions to the jury. As was said in Starr v. United States, 1894, 153 U.S. 614, 626, 14 S.Ct. 919, 923, 38 L.Ed. 841:

"It is obvious that under any system of jury trials the influence of the trial judge on the jury is necessarily and properly of great weight, and that his lightest word or intimation is received with deference, and may prove controlling."

In Bollenbach v. United States, 1946, 326 U.S. 607, 612, 66 S.Ct. 402, 405, 90 L.Ed. 350, the Supreme Court quoted with approval this statement in Starr v. United States and in doing so noted that " * * *

jurors are ever watchful of the words that fall from him (the trial judge). *Particularly in a criminal trial, the judge's last word is apt to be the decisive word.*" (Emphasis supplied.)

In the instant case there was a dispute, albeit a fragile one, as to basic facts. Defendant contended he was merely a "front" man in a "bookmaking" operation headed by others he could not or would not name; that his only profit was a 25 cent service charge on each bet; and that the $127,000 found by the New Jersey authorities belonged partly to those who owned the illegal business and partly to his mother-in-law. It is conceivable, however unlikely, that the jury might have believed the defendant.

For the reasons stated we are constrained to reverse and to direct a new trial. It is regrettable that we are compelled to do so because the record clearly discloses that there was ample evidence to support the jury's verdict of guilty and on this appeal no question was raised with respect to the correctness of the trial judge's rulings on the admission of evidence and the conduct of the trial except with respect to his charge.

For the reasons stated the judgment of the District Court will be reversed and the case remanded for further proceedings consistent with this opinion.

6. The rule on this subject was clearly stated in United States v. Murdock, 1933, 290 U.S. 389, 394, 54 S.Ct. 223, 225, 78 L. Ed. 381:
"In the circumstances we think the trial judge erred in stating the opinion that the respondent was guilty beyond a reasonable doubt. A federal judge may analyze the evidence, comment upon it, and express his views with regard to the testimony of witnesses. He may advise the jury in respect of the facts, but the decision of issues of fact must be fairly left to the jury. Patton v. United States, 281 U.S. 276, 288, 50 S.Ct. 253, 74 L.Ed. 854; Quercia v. United States, 289 U. S. 466, 53 S.Ct. 698, 77 L.Ed. 321. *Although the power of the judge to express an opinion as to the guilt of the defendant exists, it should be exercised cautiously and only in exceptional cases.*" (Emphasis supplied.) Exceptional cases have been held to be ones in which the facts are virtually undisputed. United States v. Meltzer, 7 Cir., 1938, 100 F.2d 739, 747; Hartzell v. United States, 8 Cir., 1934, 72 F.2d 569, 586; United States v. Raub, 7 Cir., 1949, 177 F.2d 312; Billeci v. United States, 1950, 87 U.S.App.D.C. 274, 184 F.2d 394, 402, 403, 24 A.L.R.2d 881.