**UNITED STATES of America,
Appellee,**

v.

**Smith F. BRANDOM, Jr., Appellant.**

**No. 71–1499.**

United States Court of Appeals,
Eighth Circuit.

Submitted Sept. 11, 1972.

Decided March 12, 1973.

Rehearing Denied July 23, 1973.

David W. Russell, Kansas City, Mo., for appellant.

Anthony P. Nugent, Jr., Asst. U. S. Atty., Kansas City, Mo., for appellee.

Before MATTHES, Chief Judge, and LAY and HEANEY, Circuit Judges.

HEANEY, Circuit Judge.

The principal question [1] on appeal is whether the trial judge impermissibly commented on the evidence in his charge to the jury, thus, in effect, directing a verdict. We hold that it did so, and reverse the defendant's conviction.

The defendant was convicted on Counts I, II, III and XI of the indictment which charged him with violating the mail fraud statute, 18 U.S.C. § 1341.[2] The evidence showed that the de-

was produced. The envelope contained a prepaid postage mark and certified mail tags. With respect to Count XI, there was evidence of an unvaried practice of mailing at the Department of Insurance, and there was testimony by the individual who had mailed the letter and by the recipient that it had been mailed. With respect to Counts III and IV, the evidence was not so strong but was, nonetheless, sufficient. Compare, United States v. Brickey, 426 F.2d 680, 684 (8th Cir.), cert. denied, 400 U.S. 828, 91 S.Ct. 55, 27 L.Ed.2d 57 (1970); Winel v. United States, 365 F.2d 646, 648 (8th Cir. 1966). But see, United States v. Baker, 50 F.2d 122 (2nd Cir. 1931). In oral argument before this Court, the defendant appeared to suggest that the only fundamental issue in the case was that of the defendant's intent.

Finally, the defendant contends that the evidence was insufficient to show that his insurance company was insolvent, or that he had fraudulently misrepresented the company's financial status. These contentions are also without merit.

---

1. The defendant argues that it was error to admit evidence of acts committed beyond the period prescribed by the statute of limitations. This argument is without merit. United States v. Andreas, 458 F.2d 491 (8th Cir.), cert. denied, 409 U.S. 848, 93 S.Ct. 54, 34 L.Ed.2d 89 (1972); United States v. Blosser, 440 F.2d 697, 699 (10th Cir. 1971); United States v. Gross, 416 F.2d 1205, 1210 (8th Cir. 1969), cert. denied, 397 U.S. 1013, 90 S.Ct. 1245, 25 L.Ed.2d 427 (1970).

The defendant argues that the trial judge did not adequately instruct with respect to the evidence of the defendant's actions prior to the statute of limitations, and that he did not adequately instruct with respect to those actions which constituted violations of state law. This argument is without merit. The instructions taken as a whole were quite sufficient in these respects.

The defendant argues that the proof of mailing was insufficient. The evidence as to mailing, particularly with respect to Counts I and XI, was clear. With respect to Count I, there was evidence of a practice of mailing in the defendant's office, and the envelope containing the defendant's financial report

2. None of the other counts of the indictment went to the jury.

fendant operated the Midwest Mutual Casualty Company and its management company, Gibraltar Management Corporation. The essence of the charge was that the defendant had fraudulently misrepresented the financial status of the insurance company so that it could continue doing business for the defendant's benefit, despite its failure to maintain the assets required by state law. The first three counts charged that the defendant had mailed fraudulent financial reports to the State of Missouri Division of Insurance. Count XI charged that he had caused the Division of Insurance to mail fraudulent information concerning the financial status of the company to an individual who had made inquiries.

The trial judge correctly instructed the jury that the following essential elements of the offense must be established:

"First, the defendant's act or acts of having devised and having intended to devise a scheme or artifice to defraud and to obtain money and property from Gibraltar Management Corporation, and Midwest Mutual Casualty Company and its policyholders and claimants by means of the false and fraudulent pretenses, representations and promises as submitted to you in this charge; and

"Second, the defendant's act or acts of using or causing the use of the mails as submitted to you; and

"Third, the defendant's wilful and knowing doing of said act or acts with intent to execute the scheme or artifice to defraud, as submitted to you."

However, at the close of his instructions, the court made the following comments to the jury with respect to the defendant's intent to defraud and execute the scheme to defraud:

"Let's take the cross-checks which occurred at the end of each month in respect to the particular statements which are involved in Counts One, Two, Three and Eleven. *It seems to me that this evidence shows beyond a reasonable doubt that under an arrangement which was dictated by the defendant,* and recorded by the witness Doris Howard, about drawing a check on Gibraltar account at the end of the month payable to Midwest, and holding it up until a check was thrown back from Midwest to Gibraltar on the first of the month, or the first business day following the close of the last month, *that this arrangement was designed to and did misrepresent the financial condition of Midwest Casualty Company on the books of the company and on the statements submitted to the Insurance Department.*

"In the first place, I read you the paragraph in the management contract which provided that the management fees would not be due and payable to Gibraltar from the premiums written during the month until sometime on or before the 15th day of the month following that in which the business was written. And you have heard the evidence which, in my judgment is clear, and shows beyond a reasonable doubt that Gibraltar was in fact in violation of that contract drawing premiums before they were due on estimates in amounts which were quite substantially higher than when they became due. And this would adversely affect the financial position of Midwest if it were honestly reported in the financial statement.

"And to show you why I believe the evidence establishes this beyond a reasonable doubt, I am going to refer to the fact that the arrangement, as shown by the document in evidence that Mrs. Howard identified with her manuscript on it that she was told this procedure by the defendant, to follow it, there was a specific direction that the Gibraltar check which was drawn on the 31st and which was supposed to put back this overdraw and for which there was no money in the bank, was not to be deposited until the first when Midwest had given it back another check which created a new overdraw on the management fees

and for which Midwest had money in the bank.

"The net result of this transaction is that Midwest was itself paying back, restoring to Gibraltar, the overdraw which it pretended to have paid off by drawing a check and dating it on the 31st of the month and then holding it up and not depositing it in the bank.

"A good way to test that in your mind is to just assume that Midwest had drawn a check on the 31st, since the end of the month is said to be a normal accounting period, and was so used by Gibraltar for the amount that it drew on the first. It would have reduced Midwest's cash balance by that amount on the 31st. So in this way, a check which was never deposited, which was not intended to be deposited on the 31st of a month, was misrepresented in the statements as cash, a deposit in transit, when as a matter of fact it had not been deposited under the understanding and was not deposited until the first of the month. And I am sure that the evidence shows this beyond a reasonable doubt." (Emphasis added.)

█ The trial court may express its opinion on the guilt of the accused only where all facts are admitted by the accused and only a question of law remains. United States v. Murdock, 290 U.S. 389, 54 S.Ct. 223, 78 L.Ed. 381 (1933); Billeci v. United States, 87 U.S.App.D.C. 274, 184 F.2d 394 (1950). See, United States v. Spica, 413 F.2d 129, 133 (8th Cir. 1969). Where the question of intent to commit the offense

charged is disputed, an expression of opinion on the guilt of the accused is reversible error. United States v. Murdock, *supra*; United States v. Musgrave, 444 F.2d 755, 763 (5th Cir. 1971); United States v. Smith, 399 F.2d 896, 899 (6th Cir. 1968).

█ In the present case, the trial judge instructed the jury that the evidence showed "beyond a reasonable doubt" that the defendant had "dictated" an arrangement which "was designed to and did misrepresent the financial condition of Midwest Casualty Company on the books of the company and on the statements submitted to the Insurance Department." This statement made it clear to the jury that, in the trial judge's opinion, the government had produced proof beyond a reasonable doubt of two of the three essential elements of the offense—that the defendant had acted with specific intent to defraud, and that he had, with intent to execute his scheme to defraud, submitted reports to the Division of Insurance. Yet, the issue of intent was disputed by the defendant in cross-examination, through defense witnesses and in his argument to the jury. In our view, the trial judge's comments were equivalent to a partial directed verdict and expression of guilt.

█ The government urges, however, that in this case, the trial judge's comments are not reversible under *Murdock* because the trial judge did not actually use the term "guilt" in stating its opinion.[3] We find this distinction to be

---

3. The only element on which the trial judge did not offer his opinion was whether the mails were in fact used. However, as we indicated in n. 1, *supra*, the evidence on mailing was clear.

The government relies on Hartzell v. United States, 72 F.2d 569 (8th Cir.), cert. denied, 293 U.S. 621, 55 S.Ct. 216, 79 L.Ed. 708 (1934). In *Hartzell*, however, the Court found that an exceptional situation under United States v. Murdock, 290 U.S. 389, 54 S.Ct. 223, 78 L.Ed. 381 (1933), existed in that a violation of the statute, with which the defendant

was charged, existed on the basis of the undisputed facts.

In United States v. DePugh, 434 F.2d 548, 554 (8th Cir. 1970), cert. denied, 401 U.S. 978, 91 S.Ct. 1208, 28 L.Ed.2d 328 (1971), the defendant was convicted of bail jumping. This Court sustained the conviction even though the trial judge had instructed the jury:

"And as I told you, under the law I think it would be a fair finding that the government has proved beyond a reasonable doubt that he deliberately left Norborne, Missouri, absented himself

without merit. Where the essential element of intent is in dispute, the defendant is just as effectively prejudiced whether the court states, as in *Murdock*, that the defendant is "guilty," or if it states, as here, that the government has established the disputed element of intent beyond a reasonable doubt. See, McBride v. United States, 314 F.2d 75 (10th Cir. 1963); Bennett v. United States, 252 F.2d 97, 99 (10th Cir. 1958); Davis v. United States, 227 F.2d 568 (10th Cir. 1955). *Cf.*, United States v. Ornstein, 355 F.2d 222, 224 (6th Cir. 1966).

In McBride v. United States, *supra*, the defendant was also charged with mail fraud. He argued that there was no intent to defraud. At the close of that trial, the judge also commented on the evidence. He did not state that he believed the defendant to be "guilty,"

but made it clear that he believed that fraudulent intent had been established.[4] The Court of Appeals reversed, relying on United States v. Murdock, *supra*, and stated:

> " * * * The comments must * * * be taken as a statement of the court that the accused was guilty, and this was not warranted under the circumstances. * * *"

McBride v. United States, *supra*, 314 F. 2d at 77.

While we believe that the trial judge's statement of opinion with regard to the element of intent constitutes reversible error under United States v. Murdock, *supra*, we believe his other comments provide additional reasons for reversing this case.[5] As Judge Stephenson recently said:

> " * * * The trial court commands the attention and respect of the jury.

from there where—the only address the government had for him, and did not return to the Western District of Missouri for further proceedings in this case."

In *DePugh*, unlike the present case, the Court of Appeals specifically found that the trial judge had fairly summarized the evidence and had not assumed the role of an advocate.

4. In McBride v. United States, 314 F.2d 75, 76 (10th Cir. 1963), the trial court had instructed the jury:

> " 'Now at this point I should like to say, as the third member or thirteenth member of the jury, that this is a rather simple case.
>
> " 'The facts are clear in my mind that this little corporation was organized but for one purpose, and that is to use the mails and to defraud people, little people, out of money.
>
> " 'I believe from the evidence that Mr. Rogers had no intention at any time to be in good faith in his work, in the organization of the company, the use of the mails, sending salesmen out to go out and prey upon people who were in desperate need of some financial help.
>
> " 'Now we get down to later; this accused was employed or engaged. I can't help but believe that he knew of all the lack of good faith in the business that he joined up with. I can't help but believe that he went about Texas

and Louisiana and Mississippi, he knew that he was doing wrong. He is bound to have known it.

> " 'Now I don't know. He says that he did it in good faith and that he was employed and that he worked as an employee, that he reported these things in order that somebody might, the company might make these loans. I can't help but believe that the accused here knew well when he started out that he was going to make a commission and whether or not he ever saw these poor people again or not it made little or no difference to him.
>
> " 'My views are that it's pretty serious business when we permit the people to use our mails and take advantage of our people.
>
> " 'Now what I have said to you is simply my views and you must disregard it. I have nothing to say except that I can make remarks as I have; but you must disregard what I have said about this case.
>
> " 'You are the sole jurors in this case. You must pass upon this evidence yourself, so I am asking you to disregard what I have said to you with reference to my views. Disregard it completely. Do not consider that I have ever said anything to you.' "

5. The trial judge commented:

> "Now, the third and crucial—not crucial, but third and one of the primary issues in the case—is the alleged

Great care must be exercised so as to avoid the appearance of advocacy for a particular party. * * *"

Scruggs v. United States, 450 F.2d 359, 363 (8th Cir. 1971), cert. denied, Chambers v. United States, 405 U.S. 1071, 92 S.Ct. 1521, 31 L.Ed.2d 804 (1972). Accord, United States v. Dunmore, 446 F. 2d 1214, 1218 (8th Cir. 1971), cert. denied, 404 U.S. 1041, 92 S.Ct. 726, 30 L. Ed.2d 734 (1972).

The Supreme Court has recognized:

" * * * The influence of the trial judge on the jury 'is necessarily and properly of great weight' and 'his lightest word or intimation is received with deference, and may prove controlling'. * * *"

Quercia v. United States, 289 U.S. 466, 470, 53 S.Ct. 698, 699, 77 L.Ed. 1321 (1933).

In Weare v. United States, 1 F.2d 617, 618 (8th Cir. 1924), rev'd, 276 U.S. 599, 48 S.Ct. 321, 72 L.Ed. 724 (1928), we stated:

"The instructions, however, should not be argumentative. The court cannot direct a verdict of guilty in criminal cases, even if the facts are undisputed. * * * It should not be permitted to do indirectly what it cannot do directly, and by .its instructions to in effect argue the jury into a verdict of guilty." (Citation omitted.)

■ The trial judge's analysis of the evidence was, by its terms, an argument for his view of the evidence. See, Har-

---

diversion of $127,000 worth of alleged premium remittances to Midwest to the bank account of the Gibraltar Management Corporation in Kansas City, and the alleged use of that money to pretend to make a contribution to surplus. "I don't want to say exactly in what amount the proceeds of that $127,000 worth of checks from agents and from Able Investment Company were premium collections, and the exact amount that was used in a pretense to make a contribution to capital. But the evidence in my judgment shows beyond a reasonable doubt that somewhere between fifty-odd thousand dollars, as I think is properly inferable from the defendant's evidence or ninety-something thousand dollars, and possibly the $127,000 of Midwest's money was used by Gibraltar in a pretense of making a contribution. In other words, *the evidence shows beyond a reasonable doubt* that the Insurance Department *was deceived* into believing that somewhere between fifty-some odd thousand dollars and $127,000.00 was contributed to surplus of Midwest when it was a matter of fact the proceeds of checks belonging to Midwest which were *surreptitiously* carried physically from St. Louis to Kansas City, and the checks were cuased [sic] to be endorsed by a minor employee named Lukers on behalf of Midwest to Gibraltar Management Corporation, and were put in Gibraltar Management Corporation's accounts. * * *

"*I know sometimes the hand is quicker than the eye, but this time it is pretty slow, and it would be a peculiar lack of perception and vision to be able to not see through this.*

"You will remember that up to this time in March, those premiums had gone through directly to Midwest and been deposited in Midwest's account. No one had claimed that they should go through Gibraltar's account in the first instance and the checks were made payable by Able and others to Midwest Mutual Casualty for these remittances. Then the crisis of March cameup [sic] when the Insurance Superintendent demanded $150,000.00 contribution to surplus of Midwest Mutual Casualty Company, and despite the provisions of the contract, and despite the repeated overdrafts which were maintained through the cross-check matter, under Gibraltar's management fee account, the whole practice was changed. The checks were endorsed directly to Gibraltar Management Corporation and never entered on Midwest Mutual Casualty Company's account. I believe the evidence shows this beyond a reasonable doubt.

"*And to further cover up the transaction,* they weren't even deposited in any St. Louis account. Someone packed them up and carried them up to Kansas City where they were put in the Gibraltar Management account." (Emphasis added.)

dy v. United States, 118 U.S.App.D.C. 253, 335 F.2d 288 (1964). Throughout his comments, he made argumentative statements which emphasized his belief that a fraudulent intent had been proven. Furthermore, while the trial judge summarized the evidence favorable to the government, it failed to do the same with respect to the evidence submitted by the defendant. This was error, United States v. Dunmore, *supra*, 446 F.2d at 1218; Boatright v. United States, 105 F.2d 737, 739 (8th Cir. 1939), even though the evidence supporting the defendant was insubstantial.[6] The only mention of evidence produced by the defendant was a negative one:

"Mr. Burgee's testimony [the defendant's accountant], in some respects, left a great deal wanting, in my mind. He assumed some things were loans from Able that were shown on the books to be not loans. He also tried a cut-off date for his computation to show how much of the agents' collections had been realized at the time Gibraltar made this statement. And even then, his own evidence, making those assumptions, showed that at the time the $150,000.00 was completely paid, that there was a large part of those agents' collections which went into the payments. And I think you should scrutinize that transaction very carefully."

■ Moreover, the prejudice to the defendant from these erroneous comments was not cured by the trial judge's instructions to the jury that they were the sole judge of the facts, and that they must determine whether there was an intent to defraud beyond a reasonable doubt.[7] United States v. Smith, *supra*,

6. Shafer, the attorney who had represented Midwest Mutual Casualty Company, testified. He stated that though he was familiar with certain aspects of the alleged scheme, he had not advised the defendant that they were unlawful. He stated that he believed the "cross-checks" were not unlawful because the defendant had no criminal intent. He stated, with regard to the "cross-checks," that:

"These were done at Mr. Brandom's instructions for two reasons. One, he wanted there to be no question with the Internal Revenue Service as to whether or not Gibraltar was or was not entitled to a fee, and no question as to whether or not they had taken or had not taken fees, because you have the problem of constructive receipt of income.

"His second purpose was that he wanted at no time for there to be any question as to whether or not Gibraltar might have waived a portion of its fee, thus at the end of the month they would cross-check in order to establish the amount of the gross, I believe, the net fee would be taken then."

7. The trial judge prefaced his comments with the following remarks:

"Now, that is the formal charge but I want to give you another instruction and then I want to make some comments about this case which, from my experience as a trial lawyer of 29 years and nine years on this Court, I hope will be of some help to you, but I first want to instruct as to the weight they have.

"The law of the United States permits the judge to comment to the jury on the evidence in the case. Such comments are only expressions of the judge's opinion as to the facts; and the jury may disregard them entirely, since the jurors are the sole judges of the facts.

"In other words, what I am about to say to you now you need not follow and constitutes only my opinion about some of the crucial issues in this very complicated case.

"There has been a great deal of argument about loss reserves and about whether the company was insolvent, about whether at a particular time one person or another was responsible for the entries on the books, whether or not information in Gibraltar's books was hidden or concealed from the Insurance Department, and whether or not in the long run Midwest Mutual actually lost anything or whether the money was put back and restitution was made. And you should give consideration to these things. But I think there are some primary issues in this case on which the evidence is quite clear and I want to tell you what I believe the evidence has shown on these particular items which are, in my judgment, some of the most important in the case.

399 F.2d at 899; McBride v. United States, *supra*; Davis v. United States, *supra*. A similar instruction was given by the trial judge in the *Murdock* case. Nevertheless, the Supreme Court reversed. This Court has recognized that "a mere withdrawal of words and a direction to the jury that the question is for them, is not always sufficient." Rudd v. United States, 173 F. 912 (8th Cir. 1909). See, United States v. Dunmore, *supra*, 446 F.2d at 1217 n. 2; Cook v. United States, 18 F.2d 50 (8th Cir. 1927). Furthermore, in giving the alleged curative instruction, the trial judge emphasized his authority by pointing out his long legal experience and indicating that he was more likely than the jury to understand the "crucial" or "primary" matters on which he commented.

> "On the issues I don't discuss, I don't feel that my comments would be of any help to you. You probably know as much or more than I do about it."

8. Nothing we say in this opinion should be read as restricting the trial judge's right to impartially comment on the evidence in the federal courts. The proposed Federal Rules of Evidence state:
> "Rule 105.
> "SUMMING UP AND COMMENT BY JUDGE
> "After the close of the evidence and arguments of counsel, the judge may fairly and impartially sum up the evidence and comment to the jury upon the weight of the evidence and the credibility of the witnesses, if he also instructs the jury that they are to determine for themselves the weight of the evidence and the credit to be given to the witnesses and that they are not bound by the judge's summation or comment.
> "*Advisory Committee's Note*
> "The rule states the present rule in the federal courts. Capital Traction Co. v. Hof, 174 U.S. 1, 13–14, 19 S.Ct. 580, 43 L.Ed. 873 (1899). The judge must, of course, confine his remarks to what is disclosed by the evidence. He cannot convey to the jury his purely personal reaction to credibility or to the merits of the case; he can be neither argumentative nor an advocate. Quercia v. United States, 289 U.S. 466, 469, 53

We regret the necessity of reversing this judgment on the grounds that the experienced, able and fair-minded judge exceeded permissible comment on the evidence. The case against the defendant was a strong one, but the court's statement that the defendant's fraudulent intent had been proved beyond a reasonable doubt, along with his comments on the evidence, substantially interfered with the defendant's right to trial by jury, and require that the defendant be given a new trial. See, United States v. Hayward, 136 U.S.App.D.C. 300, 420 F.2d 142, 145 (1969); United States v. Porter, 386 F.2d 270, 276 (6th Cir. 1967); United States v. Ornstein, *supra*; Davis v. United States, *supra*, 227 F.2d at 570; United States v. Link, 202 F.2d 592, 595 (3rd Cir. 1953); Rudd v. United States, *supra*.[8]

Reversed and remanded.

S.Ct. 698, 77 L.Ed. 1321 (1933); Billeci v. United States, 87 U.S.App. D.C. 274, 184 F.2d 394, 402, 24 A.L.R. 2d 881 (1950). For further discussion see the series of articles by Wright, The Invasion of Jury: Temperature of the War, 27 Tem.L.Q. 137 (1953), Instructions to the Jury: Summary Without Comment, 1954 Wash.U.L.Q. 177, Adequacy of Instructions to the Jury, 53 Mich.L.Rev. 505, 813 (1955); A.L.I. Model Code of Evidence, Comment to Rule 8; Maguire, Weinstein, et al., Cases and Materials on Evidence 737–740 (5th ed. 1965); Vanderbilt, Minimum Standards of Judicial Administration 224–229 (1949)."
Rules of Evidence for United States Courts and Magistrates (effective July 1, 1973), 56 F.R.D. 183, 199.

Commentators have warned that the right to comment should be exercised with great caution. See, E. Devitt & C. Blackmar, Federal Jury Practice & Instructions, §§ 8.04, 10.04 (1970); Smith Jury Instructions in Seminars for Newly Appointed United States District Judges, 128 (Committee on Pre-Trial Procedure Judicial Conference of the United States, 1953). We think that the ABA Standards, Trial by Jury (Tentative Draft, May 1968) § 4.7, provide some sound standards for the trial judge who does feel a commentary is necessary in a particular case:
> "4.7 Summary of and comment on evidence.

LAY, Circuit Judge (concurring).

Although I concur fully with the analysis and holding of Judge Heaney, in view of the dissent filed I feel constrained to make an additional comment.

The cases are legion outlining the role of the trial judge when making comments to the jury. As Judge Matthes summarizes in his dissent, "if a judge deems it desirable for the sake of achieving a just result to comment upon the evidence solely for the purpose of aiding and guiding the jury in arriving at a just and fair verdict he is privileged to do so; *but he must be. careful not to intrude upon the province of the jury to make an unfettered and uninfluenced determination of fact matters submitted for their consideration.*" (My emphasis.)

When does a trial judge cross the line? If the district judge did not invade permissible boundaries here, then we might as well forget the rhetorical warnings and simply instruct lawyers that in the future this court will not entertain error relating to prejudicial judicial comment. If, as is asserted here, the evidence is so overwhelming, why must any trial judge advise a jury that in his opinion the essential elements of the criminal offense have been proved beyond a reasonable doubt?

I sense comments such as this are fomented because of a lingering doubt by some jurists that jurors as a whole are not really intelligent enough to come to the *right* conclusion. This lingering doubt has been the basis down through the years for the continuing invidious attack against the jury system. How wrong this is. Judges have no gifted insight or peculiar competence in determining facts; their view as to what is right and just must always be equated with that of the common man. In this area of the law the benevolent judgment of a judge deserves no higher consideration on the scale of justice than any other man. The danger of such comment is that it places the defendant at an unfair disadvantage since it allows the presid-

"(a) The court, at the time it instructs the jury, may summarize and comment on the evidence, provided the jury is clearly and unequivocally instructed that it is the exclusive judge of the facts, that it is to determine the weight of the evidence and the credibility of witnesses, and that it is not bound by the comments of the court.

"(b) The summary and comment permitted in subsection (a) is governed by the following principles:

"(i) The court may analyze the evidence, draw the attention of the jury to important portions of the evidence, and fairly and accurately summarize the contentions of both the prosecution and the defense.

"(ii) The court may not suggest a verdict of guilty or not guilty, nor may the court directly express an opinion on the guilt or innocence of the defendant.

"(iii) The court may not present any item of evidence as a proven or undisputed fact unless the matter has been affirmatively conceded or is the subject of judicial notice.

"(iv) The court may state the law and comment on matters in evidence bearing on the credibility of any witness, but may not directly express an opinion that certain testimony is worthy or unworthy of belief."

The tentative draft of the ABA Standards, Trial by Jury were submitted to the House of Delegates of the American Bar Association along with the recommendation of the Council of the Section of Criminal Law that § 4.7 be omitted. The commentary accompanying this recommendation stated in part:

"Some who opposed the standard have done so on traditional grounds (as set forth at p. 125 of the original report), e. g., the danger of abuse and the difficulty in drawing the line between proper and improper comment. Others in opposition were primarily motivated, however, by recent developments which would make such comment particularly hazardous in cases where the defendant does not take the stand, and by the fact that permitting it only when the defendant does take the stand might pose other problems with respect to the defendant's right to testify which outweigh the value of such comment."

See, Griffin v. California, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965); ABA Standards, Trial by Jury, 4, 5 (Supplement, Sept. 1968). The House of Delegates deleted § 4.7 from the approved draft.

ing judge to testify as a professional witness and in a manner no other witness would ever be allowed to do.

When a judge informs a jury that in his opinion the essential elements of a crime have been proven beyond a reasonable doubt, he instructs the jury that the defendant is guilty. To attempt to hold otherwise is to shadow box with reality. When this is done, the judge serves as a fact finder. Yet as a fact finder he possesses the same human frailties, biases and prejudices as the ordinary juror. In fact, he falls far short of the valued expertise of the jury, for the priceless value of the *composite* jury is its ability to *equate* conduct in terms of community values and common affairs of life. A single judge cannot possess a similar sense of community values.

We should not forget, as Justice Strong noted almost a century ago in Strauder v. West Virginia, 100 U.S. 303, 308–309, 25 L.Ed. 664 (1879): "The very idea of a jury is a body of men composed of the peers or equals of the person whose rights it is selected or summoned to determine; that is, of his neighbors, fellows, associates, persons having the same legal status in society as that which he holds." This postulate is destroyed if the judge assumes the thirteenth chair in the jury box.

In a criminal proceeding, whenever any trial judge comments on the evidence in such an unfair manner so as to tell the jury, directly or indirectly, that a defendant is guilty beyond a reasonable doubt, it is my judgment that, regardless of the strength of the evidence, the defendant has been denied a fair trial and due process requires a reversal of the conviction.

MATTHES, Chief Judge (concurring in part—dissenting in part).

The rejection of appellant's contentions of error set forth in the margin of the majority opinion, footnote 1, has my full approval.

But, for reasons stated below, I respectfully disagree with the holding that the district judge impermissibly commented upon the evidence in his charge to the jury, and I therefore dissent from the reversal and remand.

We are considering an appeal from a judgment of conviction following a protracted jury trial which commenced on February 11, 1971, and terminated by the return of verdicts on March 3, 1971. This case is typical of many prosecutions for violating the mail fraud statute, in that the scheme and artifice to defraud was so designed as to require the manipulation and juggling of the bank accounts, certain assets and the records of the two companies involved, namely, Midwest Mutual and Gibraltar Management Company. This manipulation over a span of more than four years placed the Government in the position where it was required to introduce into evidence voluminous documents and the testimony of many witnesses in order to sustain and carry the burden of proving the appellant guilty beyond a reasonable doubt. There were 18 Government witnesses and three testified on behalf of the appellant (appellant did not testify). In this setting, the court's charge was, of necessity, quite lengthy. It required 43 typewritten pages of the trial transcript to reproduce the court's charge.

From this brief background, we turn to the question in controversy.

We need cite no authority for the settled principle that the charge must be viewed and considered in its entirety and as a whole. It is also a cardinal principle of federal jurisdiction that the trial judge in a criminal case is more than a mere moderator. He is charged with the heavy responsibility of so conducting the trial that justice is rendered. To that end, the judge may assist the jury in arriving at a just conclusion by explaining and commenting upon the evidence and by expressing his opinion upon the facts, provided, of course, he makes it clear that all factual questions are left to the jury for determination.

Nearly a century ago, the Supreme Court of the United States stated:

"In the courts of the United States, as in those of England, from which our practice was derived, the judge, in submitting a case to the jury, may, at his discretion, whenever he thinks it necessary to assist them in arriving at a just conclusion, comment upon the evidence, *call their attention to parts of it which he thinks important, and express his opinion upon the facts*; and the expression of such an opinion, when no rule of law is incorrectly stated, and all matters of fact are ultimately submitted to the determination of the jury, cannot be reviewed on writ of error." (Emphasis supplied.)

Vicksburg & Meridian R. R. Co. v. Putnam, 118 U.S. 545, 553, 7 S.Ct. 1, 2, 30 L.Ed. 257 (1886), cited with approval in Ray v. United States, 367 F.2d 258, 262 (8th Cir. 1966), cert. denied, 386 U.S. 913, 87 S.Ct. 863, 17 L.Ed.2d 785 (1967). This principle was adhered to by the Supreme Court in Quercia v. United States, 289 U.S. 466, 469, 53 S. Ct. 698, 77 L.Ed. 1321 (1933), and again in United States v. Murdock, 290 U.S. 389, 394, 54 S.Ct. 223, 78 L.Ed. 381 (1933). Cases decided by the federal courts of appeals standing for the same principle are legion. It is sufficient for the purpose of this dissent to cite only Hartzell v. United States, 72 F.2d 569 (8th Cir.), cert. denied, 293 U.S. 621, 55 S.Ct. 216, 79 L.Ed. 708 (1934), and Franano v. United States, 310 F.2d 533 (8th Cir. 1962), cert. denied, 373 U.S. 940, 83 S.Ct. 1545, 10 L.Ed.2d 694 (1963).

In the *Franano* case, which I authored on behalf of a unanimous court, I delineated the function of a trial judge in presiding over a criminal case and cited many authorities to support my conclusions. I adhere to everything written in the *Franano* opinion, and would pursue the same course in disposing of this appeal.

In the final analysis, as I see the situation, every case must rest upon its own bottom. I find no quarrel with the proposition that a trial judge should exercise care and discretion in expressing an opinion and should never identify his position so as to appear partial. In brief, and to the point, if a judge deems it desirable for the sake of achieving a just result to comment upon the evidence solely for the purpose of aiding and guiding the jury in arriving at a just and fair verdict he is privileged to do so; but he must be careful not to intrude upon the province of the jury to make an unfettered and uninfluenced determination of fact matters submitted for their consideration.

The comments which the majority condemns here are quite different in my view than the charge that was found fatally defective in Quercia v. United States, *supra* and United States v. Murdock, *supra*. In *Quercia*, the court stated:

" 'And now I am going to tell you what I think of the defendant's testimony. You may have noticed, Mr. Foreman [of the jury] and gentlemen, that he wiped his hands during his testimony. It is rather a curious thing, but that is almost always an indication of lying. Why it should be so we don't know, but that is the fact. I think that every single word that man said, except when he agreed with the Government's testimony, was a lie.' "

289 U.S. at 468, 53 S.Ct. at 698. In *Murdock*, the condemned charge was submitted in this language:

"The court feels from the evidence in this case that the Government has sustained the burden cast upon it by the law and has proved that this defendant is guilty in manner and form as charged beyond a reasonable doubt."

290 U.S. at 393, 54 S.Ct. at 225.

In Hartzell v. United States, supra, the trial judge gave this instruction:

"Now, with that caution I will say to you, gentlemen, that I have listened

to all this evidence as intently as you have I think, and in the opinion of the court the government has established the facts which ought to convince reasonable men beyond a reasonable doubt, and taking the evidence as a whole I think the government has established the allegations of these several counts that remain in the indictment."

72 F.2d at 586.

It seems to me that the *Hartzell* instruction was far more poisonous than that portion of Chief Judge Becker's comments which the majority condemns as impermissible and prejudicial. Yet, in the *Hartzell* case, also involving a mail fraud prosecution, this court held that the court's comment was not prejudicial.

After careful consideration of Judge Becker's charge in its entirety I have reached the conclusion that Judge Becker's assailed comments were not so impermissible as to constitute prejudicial error. At the outset of Judge Becker's charge, he informed the jury of the presumption of innocence and that it was necessary for the Government to prove the defendant guilty beyond a reasonable doubt. In fact no less than four times was the jury told that before they could convict, the Government was required to produce evidence which convinced the jury the defendant was guilty beyond a reasonable doubt. Nowhere in the instructions, including the comments which are complained of, did Judge Becker even remotely suggest that he felt that the Government had proved the appellant guilty beyond a reasonable doubt and he cautioned the jury to decide the case on the basis of the evidence.

As I view this record, there was negligible conflict in the evidence concerning three of the devices, commented upon by the judge, which were successfully used by the appellant in perpetrating the fraudulent scheme which eventually resulted in the financial collapse of the companies involved: (1) the check kiting procedure; (2) the improper and unlawful pledging of the United States Treasury bills owned by Midwest to secure Gibraltar loans; and (3) the diversion of a substantial amount of premium remittances (between $50,000 and $127,000) for the purpose of deceiving the Missouri Division of Insurance. Since the matters were proved beyond doubt, I am not willing to fault the judge for telling the jury that they were.

Certainly, I recognize the appellant was entitled to a fair trial, but not a perfect one. I am convinced that the able and seasoned trial judge exercised restraint and caution throughout the trial and in submitting the case to the jury. The evidence of guilt was strong and convincing. Consequently, I cannot bring myself to believe that Judge Becker's comments, which are the sole ground for sending the case back for another long trial, improperly influenced the jury. I would affirm.