**UNITED STATES of America, Appellee,**

v.

**Steven Earl NEUMANN, Appellant.**

No. 88–5044.

United States Court of Appeals,
Eighth Circuit.

Submitted May 9, 1989.

Decided Oct. 13, 1989.

Rehearing Denied Nov. 21, 1989.

Mark D. Nyvold, Minneapolis, Minn., for appellant.

Joan N. Ericksen Lancaster, Minneapolis, Minn., for appellee.

Before LAY, Chief Judge, and McMILLIAN, ARNOLD, JOHN R. GIBSON, FAGG, BOWMAN, WOLLMAN, MAGILL and BEAM, Circuit Judges, En Banc.

MAGILL, Circuit Judge.

Steven Earl Neumann appeals from his conviction for bank robbery by the use of a dangerous weapon in violation of 18 U.S.C. §§ 2113(a) and (d), and use of a firearm during the robbery in violation of 18 U.S.C. § 924(c)(1). Neumann alleges error in the judge's instructions and comments on the evidence, the scope of the search warrant, and the prosecutor's closing argument. We affirm the judgment of the district court entered on his conviction.[1]

## I. BACKGROUND

On May 28, 1987, a person armed with a rifle robbed the McGregor State Bank in McGregor, Minnesota, taking approximately $16,611 in currency. Bank tellers de-

---

1. The Honorable Edward J. Devitt, Senior United States District Judge for the District of Minnesota.

scribed the robber as about five feet eight inches tall, wearing a long coat, jeans, and a broad-brimmed hat, with his entire face but for his eyes wrapped in cloth.

On August 1, 1987, Neumann was arrested. Two days later, Minnesota and federal authorities executed a search warrant for Neumann's pickup truck and attached camper. Approximately $4,000 in bills was recovered, along with receipts and other documentation for cash transactions postdating the robbery, including the purchase of the pickup and camper, boots and clothing, saddle and tack, a horse, and a horse-boarding contract. A jury convicted Neumann on two separate counts. He was sentenced to consecutive sentences of five and twenty years. A panel of this court affirmed Neumann's conviction on appeal. 867 F.2d 1102. We granted rehearing en banc, thus vacating the panel opinion. Sitting en banc, we again affirm the judgment entered on his conviction.

## II. DISCUSSION

### A. The Jury Charge

Neumann alleges three errors in the trial court's charge to the jury. First, he argues that the court's comments on the evidence effectively directed a verdict against him on several elements of the charged offenses. Second, Neumann contends that the court's comments on the evidence unfairly omitted references to several factors favorable to the defense. Third, he contends the court's instruction on the possession of recently stolen property was in error because it confused possession of the stolen fruits of the crime (bank money) with possession of the allegedly stolen instrumentality of the robbery (a rifle).

■ We begin by noting that Neumann objected to none of these particular errors at trial. Our review thus proceeds under a plain error standard. Fed.R. Crim.P. 52(b). Failure to object to the jury charge in a timely and specific manner precludes appellate review, and the judgment will be reversed only if the trial court committed plain error. *United States v. McKnight*, 799 F.2d 443, 447 (8th Cir.1986).

This court will apply the plain error rule sparingly, and only where necessary to prevent a miscarriage of justice. *United States v. DiBenedetto*, 542 F.2d 490, 494 (8th Cir.1976).

■ Neumann takes issue with the following portion of the trial court's instruction:

I have the feeling, from the arguments of both lawyers and from listening to the evidence—and I kept pretty good notes—that there really isn't much question about these four requirements in one case and two in the other being satisfied, if this is the defendant who did the robbery. And, of course, that is the principal defense of the defendant—that he didn't do it and the government hasn't proved that he did it. So I think that, probably, may turn out to be the principal issue that you have for decision; not the satisfaction of these requirements, because it doesn't seem to be disputed that somebody came into the bank with a rifle and threatened people and shot up on the wall. And the three tellers told us how frightened and apprehensive they were. And money was gone, no question about it. Some $16,000.00.

So these somewhat technical requirements for bank robbery and using a dangerous weapon in a crime of violence, it seems to me, are satisfied if, if this is the man who did it. [Tr. at 503.]

Although Neumann concedes that his counsel made no objection to these comments at trial, he contends that the plain error rule mandates a reversal of his conviction because in effect the trial judge expressed his opinion on his guilt as to some of the elements of the crime charged, and thereby impermissibly usurped the jury's function. *United States v. Brandom*, 479 F.2d 830, 833 (8th Cir.1973).

Given the great deference the jury may give the words and actions of the trial judge, we recognize the possibility of prejudice when the trial judge's comments display one-sidedness or the prejudgment of disputed issues. The jury might take such comments as a direction to find against the defendant. *Brandom, supra; United*

*States v. Dunmore,* 446 F.2d 1214 (8th Cir.1971), *cert. denied,* 404 U.S. 1041, 92 S.Ct. 726, 30 L.Ed.2d 734 (1972); *Quercia v. United States,* 289 U.S. 466, 470, 53 S.Ct. 698, 699, 77 L.Ed. 1321 (1933). The propriety of the judge's comments must be viewed in the context of the complete charge to the jury. Here, the jury was informed that the government must prove each element of the charged offenses beyond a reasonable doubt, and that determination of guilt lay with the jury. The trial judge's comments on the evidence were prefaced with caution: "Now, these comments I make about the evidence are not intended to substitute the facts as you find them to be, but these are some comments I'm going to make to try to assist you in getting the point of it all and what the issue is." [Tr. at 502–03.]

Neumann contends that his plea of not guilty put each element of the charged offenses at issue, and therefore it was improper for the judge to comment that, apart from identity, the "somewhat technical requirements" of each offense seemed to be satisfied. In the context of the complete jury charge and the evidence presented at trial, we find that the trial judge's comments were a fair summary of the evidence, and did not relieve the jury of its duty to find that each element of the charged offenses was satisfied. The government put on a case which included direct evidence of the armed robbery of a federally insured bank. The trial judge correctly noted that this evidence was not contradicted. Neumann's counsel conceded at the pretrial status conference and the jury charge conference that identification was the basic factual issue. The trial judge also properly focused the jury's attention on the "principal issue"—circumstantial evidence establishing that Neumann was the bank robber. We hold that the judge's comments on the evidence did not constitute plain error.

Neumann also claims that the court's summary of the evidence was one-sided because it did not include several aspects of the evidence that were favorable to his defense. We find no merit in this claim. Neumann did not make a timely request at trial for the summary of his defense which he now claims should have been given. Furthermore, the comments suggested by Neumann on appeal were not supported by the evidence. *United States v. Lewis,* 718 F.2d 883, 885 (8th Cir.1983).

■ Neumann claims error in the jury instruction on the possession of recently stolen property. The judge instructed the jury that the possession of recently stolen or missing property is circumstantial evidence that could support an inference of guilt.[2] The alleged error arises in the judge's reference to possession of stolen currency and to the alleged possession of a missing (and presumably stolen) rifle used in the robbery.

2. The trial judge gave this instruction on possession of recently stolen property:

A further type of circumstantial evidence which the government presented to you was evidence of the defendant's alleged possession of Lester Hindermann's rifle and rifle case—you'll remember he said they were under the bed and, later, they were missing—and of large denominations of currency on several occasions, in Nevada and at the bar down in Shakopee or Belle Plaine and the like.

I tell you that possession of property recently missing or stolen is, ordinarily, a circumstance from which you, the Jury may reasonably draw the inference and find, in light of all the surrounding circumstances, that the defendant is guilty of the offense.

In considering whether defendant's alleged possession of recently-stolen property, like the gun and its sheath and the money, justifies an inference of guilt, the Jury are reminded that in the exercise of his constitutional rights, the accused need not take the witness stand and testify, and, also, it is to be remembered that the burden is always on the government to prove beyond a reasonable doubt every essential element of a crime before the defendant may be found guilty of it.

It is exclusively within your province to determine whether the facts and circumstances shown by the evidence in this case warrant the inference which the law permits you to draw from possession of recently stolen property. If any possession the defendant may have had of recently-stolen property, however, is consistent with innocence, or if you entertain reasonable doubt of guilt, then you must acquit the defendant. Not guilty. But if all of the evidence, direct and circumstantial, convinces you of his guilt beyond a reasonable doubt, then you should find him guilty. Tr. at 505–07.

Neumann's objection is apparently premised on the assumption that the jury would improperly infer from this instruction that the rifle was in fact stolen and was used by Neumann in robbing the bank. The impropriety comes in by the inferential leap from possession of the allegedly stolen rifle to the conclusion that Neumann indeed robbed the bank.

We find no reversible error in this instruction. The stolen property instruction was primarily directed to possession of the cash. Although Neumann was not charged with possession of the stolen rifle, or the theft of a rifle, the jury could reasonably conclude from the evidence that Neumann stole the rifle and used it in the bank robbery. A reference to both the stolen cash and the stolen rifle did not unfairly prejudice Neumann when the instructions are viewed as a whole.

### B. The Search Warrant

■ On July 31, 1987, a magistrate authorized a search of a "1976 blue Ford pickup truck, license No. MUX660, with a white camper top." The warrant authorized seizure of the following property:

1. Any documents regarding the purchase by Steven Earl Neumann of a 1976 blue Ford pickup truck, license no. MUX660, and a white camper top, including purchase agreements, vehicle title and registration documents, invoices, receipts, and other documents indicating the manner in which the vehicle and camper top were purchased.

2. A mini 14 .223 rifle, a Winchester .22 magnum rifle, ammunition and cartridges, first aid bandages, canvas bags, cowboy hats, boots, currency, *and other fruits, instrumentalities and evidence of the May 28, 1987 bank robbery* of the State Bank of McGregor, in violation of 18 U.S.C. § 2113(a) (emphasis added).

Federal agents executed the search on August 3, 1987, seizing numerous items from the truck and camper, including over $4,000 in cash, clothes, a rifle scabbard, and various receipts and other papers.

Neumann filed a pretrial motion to suppress evidence, Fed.R.Crim.P. 12(b)(3), on the following grounds:

1. That the search warrant is so lacking in probable cause as to make belief in the existence of probable cause entirely unreasonable.

2. That the affidavit in support of the search warrant is deficient in probable cause and it fails to establish any possible nexus between the things to be searched for and the places to be searched.

3. That the arrest of the Defendant was unlawful.

4. The affidavit in support of the search warrant contains material misrepresentations and a reckless disregard for the facts.

5. For such other reasons as may appear upon oral hearing of this motion.

At the motion hearing, the magistrate asked the defendant what the basis of his suppression motion was:

The Court: * * * I take it that you are moving to suppress this—on what ground, Mr. Cascarano?

Mr. Cascarano: Your Honor, we are basing it on the fact that there is *no probable cause on its face.*

The Court: Okay.

Mr. Cascarano: We submitted a motion on that, and would simply rest on the motion.

The Court: Okay.

(Tr. of September 4, 1987 motion hearing before U.S. Magistrate J. Earl Cudd, p. 4) (emphasis added).

The magistrate in his September 10, 1987 Report and Recommendation found that the warrant was supported by probable cause.[3] No objections to the Report and

---

**3.** The magistrate concluded:
The robbers [sic] use a long black coat similar to the one missing from the Hindermann ranch; the fact that the shell causing [sic] from the bank was fired from the same rifle as the shell casings produced by Hindermann,

the ranch owner; defendant's apparent sudden wealth just after the robbery; and his prior bank robbery are sufficient to constitute probable cause to believe his blue pickup contained evidence relative to the robbery of the

Recommendation were filed, and on September 24, 1987, Judge Renner, to whom the case was originally assigned, ordered that the defendant's motion to suppress be denied.

At a pretrial conference on October 28, 1987, Judge Devitt inquired whether all pretrial motions had been filed and determined. Neumann's attorney responded: "All the motions have been filed. There's no further thing to pursue on the motions." At trial, no objections were lodged to the admission of any of the items seized pursuant to the search warrant.

On appeal, Neumann argues that the warrant's language authorizing the seizure of "other fruits, instrumentalities and evidence of the May 28, 1987 bank robbery" was overbroad, resulting in the seizure of property having no previously established connection to the offense under investigation.[4]

Neumann argues that the overbroad search resulted in an indiscriminate and unwarranted intrusion, and that all evidence seized should have been suppressed. *United States v. LeBron,* 729 F.2d 533 (8th Cir.1984). The government urges us to dismiss Neumann's challenge to the specificity and execution of the warrant because that issue was first raised on appeal.[5] *United States v. Hugh Chalmers Chevrolet–Toyota, Inc.,* 800 F.2d 737, 738 (8th Cir.1986) (declining consideration of theory of admissibility raised for the first time on appeal). In response, Neumann argues that his challenge to the overbreadth of the warrant was contained in his pretrial motion to suppress on the ground that "the affidavit in support of the search warrant is deficient in probable cause and it fails to establish any possible nexus between the things to be searched for and the places to be searched."

By motion before trial, a criminal defendant is permitted to raise any objection "capable of determination without the trial of the general issue," but motions to suppress evidence *must* be raised prior to trial. Fed.R.Crim.P. 12(b). We note, in addition, that such a mandatory pretrial motion to suppress, filed on constitutional grounds in a criminal case, if denied, does not ordinarily have to be renewed by way of objection at trial. The failure to raise an objection which must, under the Rule, be made prior to trial, effects a waiver of the objection. Fed.R.Crim.P. 12(f). The advisory committee's notes explain the effect of the Rule:

> Subsection (b)(3) makes clear that *objections to evidence on the ground that it was illegally obtained must be raised prior to trial.* This is the current rule with regard to evidence obtained as a result of an illegal search. * * * It is also the practice with regard to other

---

McGregor bank. *Illinois v. Gates,* 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983).

**4.** Neumann identifies the following seized items as having no apparent connection to the bank robbery and thus being outside the scope of the warrant:
  1. Discovery magazine, containing maps of the western United States;
  2. Steno pads;
  3. Golden State magazine of California, summer 1987;
  4. J.M. Capriola, Company Cowboy Equipment Catalog, Elko, Nevada;
  5. Letter from State of Alaska to Wilbert Woerdenhoff, dated April 9, 1976;
  6. Miscellaneous papers of Neumann;
  7. Neumann family history in purple binder;
  8. Black denim pants;
  9. Leather saddle rifle scabbard;
  10. Saddle receipt dated June 20, 1987 for saddle, $1,140.78;
  11. Receipt from Schatzlein Saddle Shop dated June 5, 1987;
  12. Maps of Montana, Idaho, and Wyoming;
  13. Boarding agreement, dated July 24, 1987, between Neumann and Eagle Creek Stables;
  14. Horse ownership papers, dated June 9, 1987;
  15. Business card from F & B Antiques, Middleton, California;
  16. Miscellaneous receipts dated after May 18, 1987.
All items except 2, 5, and 15 were introduced in evidence at trial.

**5.** On the merits, the government argues, *inter alia,* that because the agents were warranted in searching the entire truck for the specific items enumerated in the warrants (e.g., currency), the "other fruits" language did not result in a more intrusive search than otherwise permitted, and that seizure of the unspecified items was permissible because their incriminating nature was readily apparent.

forms of illegality such as the use of unconstitutional means to obtain a confession. * * * It seems apparent that *the same principle should apply whatever the claimed basis for the application of the exclusionary rule of evidence may be.*

Fed.R.Crim.P. 12 advisory committee's note to 1974 Amendments (emphasis added). This court has noted that Rule 12's procedure for the prompt resolution of evidentiary questions is necessary for the expeditious conduct of criminal trials. *United States v. White,* 718 F.2d 260, 262 (8th Cir.1983).

Because the ground for suppression urged on appeal was neither presented to nor ruled upon by the trial court, we decline to review Neumann's challenge to the warrant. *See United States v. Hugh Chalmers Chevrolet–Toyota, Inc., supra.* We find that Neumann's pretrial suppression motion did not encompass the ground for suppression now argued on appeal. As noted above, in denying Neumann's motion to suppress, the magistrate concluded that probable cause existed to believe that Neumann's pickup contained evidence related to the robbery. Thus, the magistrate squarely addressed and rejected the grounds for suppression asserted in Neumann's pretrial motion. Neumann's appeal does not challenge the existence of probable cause to search the pickup, nor does he directly challenge the admissibility of the items specifically enumerated in the warrant. Neumann now challenges the execution of the warrant, asserting that the seizure of property unenumerated in the warrant under the general heading of "other fruits, instrumentalities, and evidence" of the robbery resulted in the admission of evidence outside the specificity requirement of the fourth amendment.

If Neumann had raised this ground by way of pretrial motion, the district court could have determined the reasonableness of the search and seizure. If Neumann had raised his overbreadth challenge in a timely fashion, the government could have (and, it claims, would have) attempted to justify the seizure under the plain view doctrine, or as an inventory search, or under a good faith exception to the warrant requirement.

We see no need to speculate, however, about how the district court might have dealt with the merits of a motion to suppress grounded on a claim of overbreadth. Where, as here, a defendant challenges a search warrant as facially insufficient in failing to establish probable cause, a later assertion that the evidence should be suppressed because the scope of the search warrant was too broad states a new and independent ground for suppression. *Cf. United States v. Worthington,* 698 F.2d 820, 822–24 (6th Cir.1983) (overbreadth challenge did not renew initial motion on facially deficient probable cause).

### C. The Prosecutor's Rebuttal Argument

■ Reversible error premised on prosecutorial misconduct may be established where: (1) the prosecutor's remarks are improper; and (2) such remarks "prejudicially affected the defendant's rights so as to deprive the defendant of a fair trial." *United States v. Hernandez,* 779 F.2d 456, 458 (8th Cir.1985). Prejudice is assessed by gauging the cumulative effect of the misconduct, the strength of properly admitted evidence of the defendant's guilt, and any curative actions taken by the trial court. *Id.* at 460.

■ Neumann attempted to establish at trial that an individual interviewed by the FBI in the course of its investigation of the robbery was initially a suspect. Through the cross-examination of Special Agent Robert Harvey, defense counsel brought out what on appeal it characterizes as "the most damaging evidence to the government's case," *i.e.,* the description of the "suspect" as matching that of the robber and the suspect's opportunity to commit the robbery. In his closing argument, Neumann's attorney referred to Agent Harvey's testimony which included height and weight estimates of the suspect made by a non-testifying FBI agent's report.

The prosecutor's ostensibly prejudicial comments were made in rebuttal where she pointed out that the defendant's argument

was speculative and based on the observations of a non-witness that the defendant had chosen not to call. We find that the prosecutor's remarks here were a fair response to remarks made by the defendant, and therefore the trial court did not abuse its discretion in overruling the defendant's objection to the prosecutor's argument.

Neumann contends that this rebuttal argument impermissibly shifted the burden of proof to the defense, effectively constituting an infringement of the defendant's fifth amendment right not to testify. *Griffin v. California*, 380 U.S. 609, 615, 85 S.Ct. 1229, 1233, 14 L.Ed.2d 106 (1965); *United States v. Kragness*, 830 F.2d 842, 869–70 (8th Cir.1987).

The defendant's exercise of his fifth amendment right not to testify was not infringed by the prosecutor's comments in this case. The prosecutor's comments were not directed to the defendant's failure to testify, but rather concerned the defendant's failure to call a witness. The prosecutor prefaced her remarks by stating that the defendant did not have to produce evidence or testify. The judge's instruction also informed the jury that the defendant did not have a duty to produce any evidence and that the government bore the burden of proof. The prosecutor's comments on the defendant's failure to produce Agent Surowitz as a witness were a fair reply to the argument raised by the defendant, *i.e.*, that Surowitz' testimony would establish that someone other than Neumann was a suspect in the robbery. *Kragness*, 830 F.2d at 872 (prosecutor properly pointed out that defendants could have called witnesses which defendants asserted the government should have called); *cf. United States v. Robinson*, 485 U.S. 25, 108 S.Ct. 864, 869, 99 L.Ed.2d 23 (1988) (no fifth amendment infringement where prosecutor's reference to defendant's opportunity to testify was a fair response to claim made by defendant). In this context, the prosecutor's comments were not improper. *See Rush v. United States*, 795 F.2d 638 (8th Cir.1986).

## III. CONCLUSION

Accordingly, we affirm the conviction.

McMILLIAN, Circuit Judge, dissenting.

I respectfully dissent. I cannot agree that the district court's summary of and comments upon the evidence in this case are not plain error. Accordingly, I would reverse and remand for a new trial.

If the analysis of the majority opinion in Part IIA is correct, then in every criminal case in which identity is the "principal" issue, that is, when the defendant asserts that he or she did not commit the offense charged, it is proper for the trial judge to direct a verdict against the defendant on all of the elements of the offense but identity. In my opinion, this analysis improperly diminishes the jury's role, limiting it to that of determining only identity. As I understand the law, directed verdicts against criminal defendants are not permissible. In a jury-tried case, whether or not the elements of the offense are disputed and regardless of the quantum of evidence presented against a criminal defendant, each element of the offense must be submitted to the jury, not the trial judge, for decision.

In the present case, the district court's summary of and comments upon the evidence amounted, in my opinion, to a directed verdict against appellant on each element of the offenses charged except that of identity. Trial judges may summarize fairly and comment upon the evidence and focus the jury's attention on the "principal" issues in a case. The comments here simply went too far.